IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| NICOLE G.,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO, Commissioner of Social Security Administration,<br><br>Defendant. | Civil No. 26-00142 MWJS-WRP<br><br>ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

**ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

In 2017, Plaintiff Nicole G.[1] was working as a public defender when a client dropped a courtroom table on her, causing a severe injury to her spine. Plaintiff tried to continue working after this incident, but as she explained in testimony before an Administrative Law Judge (ALJ), she ultimately had to give up the effort. And in the years since, she testified, she has been unable to hold down employment because she cannot stand, sit, or walk "for more than . . . 10 to 20 minutes without having the necessity to lie down or put my feet up," and "can't push, or pull, or lift or carry

---

[1] For reasons explained in *Sergio D.L.S. v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Plaintiff's first name and the initials of his last name are used in this order.

anything over five pounds." Dkt. No. 8-1, at PageID.84 (Administrative Record (AR) at 59). While resting in this way, she would not "be able to focus on a task . . . because the pain is too great." *Id.* at PageID.48 (AR 23).

The ALJ did not doubt that if this testimony were credited, Plaintiff would be classified as disabled and entitled to Social Security disability benefits; the record reveals no full-time work that Plaintiff could perform while needing to rest (without being able to continue work) every 20 or so minutes. *See generally id.* at PageID.47 (AR at 22) (ALJ finding only that Plaintiff could work if she could "remain[] on task" while resting). Nor did the ALJ dispute that Plaintiff does, indeed, suffer from severe impairments to her back and other parts of her body. The ALJ did not even dispute that these severe impairments *could* reasonably cause the symptoms Plaintiff described.

Nonetheless, the ALJ discredited Plaintiff's symptom testimony and concluded that she was capable of full-time employment. The question in this appeal is whether the ALJ offered sufficient reasons to account for that conclusion.

1. The standards that govern this court's review of the ALJ's reasons are well-settled. An ALJ must provide "specific, clear and convincing reasons" for rejecting a claimant's testimony about the severity of their symptoms. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (cleaned up). While that standard is an imposing one, this court's review is deferential. A reviewing court may reverse a disability determination only when "it is either not supported by substantial evidence or is based

upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). And evidence is considered "substantial," in this context, so long as there exists "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up).

But there is an important limit to this deference: while a reviewing court "will not fault the agency merely for explaining its decision with less than ideal clarity," it still must "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). That is to say, a "clear statement of the agency's reasoning is necessary because [a reviewing court] can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Id.* To qualify as an adequately "clear statement" rejecting a claimant's symptom testimony, moreover, the ALJ's finding "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Id.* at 493 (cleaned up). Put differently, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (cleaned up).

//

//

//

2. That limit on deference is dispositive here, because the ALJ did not adequately explain her rejection of Plaintiff's symptom testimony.[2]

a. Consider first the ALJ's statement that Plaintiff's symptom testimony is "inconsistent with the objective medical evidence." Dkt. No. 8-1, at PageID.49 (AR at 24). Here the ALJ pointed to three things. First, the ALJ noted that Plaintiff "has been treated conservatively." *Id.* Second, the ALJ found that Plaintiff "does not exhibit consistent clinical findings commensurate with her allegations." *Id.* Third, the ALJ observed that Plaintiff "reports significant benefit from conservative treatment measures." *Id.*

While it is conceivable that any of these reasons might support a rejection of Plaintiff's symptom testimony if adequately developed, the ALJ's written decision does not reflect that any have been adequately developed to this point. And because it is "the ALJ's responsibility to develop the record in the face of any ambiguities," *Jennifer S. v. Bisignano*, Civ. No. 25-00418, 2026 WL 2098951, at *3 (D. Haw. July 21, 2026) (citing

---

[2] The background and details of the case are laid out in the ALJ's written decision, Dkt. No. 8-1, at PageID.42-58 (AR 17-33), and this court will not rehash that background except as necessary to provide context for the court's ruling. Nor, given the narrow issue on which the court resolves this appeal, is it necessary to describe the standards an ALJ generally must follow in considering an application for Social Security disability benefits. *See generally Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724-25 (9th Cir. 2011) (describing the "five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act").

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)), these record ambiguities preclude this court from affirming on the underdeveloped grounds.

In asserting that Plaintiff has been treated conservatively for her spinal impairment, for example, the ALJ relies on the fact that Plaintiff has received "physical therapy, injections, and longstanding narcotic pain medication," and that she has neither been given an "assistive device" for mobility nor "deemed" a "surgical candidate." Dkt. No. 8-1, at PageID.49 (AR at 24). But Plaintiff's testimony is not that she is unable to walk, or that she lacks balance in a way that might require an assistive device. Her testimony, instead, is that after approximately 10 to 20 minutes of walking (or sitting or standing), the pain becomes so intense that she needs to lie down and put her feet up, and that the pain is sufficiently intense that she cannot work while recovering in this way. The ALJ offered no reason to believe that an assistive device would aid with this problem, and there is therefore no reason to believe that Plaintiff is suffering less pain than she described merely because she has not been prescribed one. The prospect of back surgery is similar. The ALJ only observed that Plaintiff would be a candidate for back surgery if "lumbar X-rays showed spine instability." *Id.* Evidently, recent X-rays have not shown any such instability. But while spine instability is unquestionably a serious problem whenever it exists—one that might require surgery to address—the ALJ has offered no reason to believe that Plaintiff's pain and other symptoms would vanish (or even be less likely) if there were no such instability. And

so the ALJ has not offered any reason to believe that the failure of any doctor to recommend surgery is fairly understood to undermine Plaintiff's assertions of pain.

The ALJ's reliance on the fact that clinical findings are not consistently "commensurate" with Plaintiff's pain is similarly undeveloped. To the extent the ALJ meant to suggest that pain symptoms can only be credited if supported by objective medical evidence, that is legal error. *See Matsuda v. Bisignano*, Civ. No. 25-00444, 2026 WL 827774, at *5 (D. Haw. Mar. 25, 2026) (explaining that "it is not appropriate for an ALJ to effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony" (cleaned up)). And while "contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony," *id.* (cleaned up), the ALJ fell short of explaining any such contradiction here. Plaintiff testified that she is always generally in pain, but that the worst of her symptoms come after walking, standing, or sitting for 10 to 20 minutes. The ALJ offered no explanation for why clinical findings that "do not regularly show gait abnormality nor neurologic deficits" but instead "generally show normal gait and coordination," Dkt. No. 8-1, at PageID.49, would be inconsistent with Plaintiff's symptom testimony. In short, the ALJ identified no clinical findings that showed Plaintiff could walk, stand, or sit comfortable and without pain even after more than 10 to 20 minutes. And the ALJ did not explain

why the clinical findings she highlighted would contradict Plaintiff's testimony that she cannot do so.[3]

Finally, the ALJ's reliance on the benefits of conservative treatment is insufficiently developed. Granted, "if a form of treatment—whether conservative or not—actually addresses a claimant's symptoms, then that might be an independent reason to conclude that their symptom testimony is not credible." *Jennifer S.*, 2026 WL 2098951, at *2. But the relevant question is not merely whether treatment has helped, but whether the record supports the conclusion that it has helped to such a great degree that it contradicts a claimant's symptom testimony. The ALJ offered no reason to conclude that the latter is the case here. Even if physical therapy, injections, and longstanding narcotic pain medications have provided a "significant benefit" to Plaintiff, the ALJ did not suggest that the benefit was large enough to allow Plaintiff to

---

[3] There is one exception: specifically with respect to Plaintiff's testimony that she can only lift about two pounds, the ALJ identified clinical findings that, in March 2024, Plaintiff "demonstrated the ability to lift a 15-pound weight with either hand." Dkt. No. 8-1, at PageID.51 (AR at 26). This objective medical evidence is sufficient to contradict Plaintiff's testimony concerning her weightlifting restrictions.

What follows? If Plaintiff's testimony about her inability to lift more than two pounds were the sole symptom testimony standing in the way of a finding of no disability, this objective medical evidence would support affirming the ALJ's denial of benefits. But it is not. As noted above, Plaintiff separately testifies that she cannot walk, stand, or sit for more than 10 to 20 minutes without needing to lie down and remain off task. The evidence about weightlifting restrictions does not contradict that separate symptom testimony. And the ALJ did not purport to reject this separate symptom testimony based on the evidence contradicting the asserted weightlifting restriction.

walk, stand, or sit for more than 10 to 20 minutes without incapacitating pain—or to rest from having walked, stood, or sat for more than 10 to 20 minutes while remaining on task. Because the ALJ's written decision does not adequately address that question, the court cannot affirm on this ground.

b. In his answering brief, the Commissioner relies on a stray passage in the ALJ's written decision: that Plaintiff was "discharged" from one pain management provider "for inconsistent urine drug screens." Dkt. No. 11, at PageID.2253 (citing Dkt. No. 8-1, at PageID.49 (AR at 24)). As the Commissioner sees it, this "suggest[s] that Plaintiff engaged in drug-seeking behavior," and the "Ninth Circuit has held that such behavior may serve to discount a claimant's allegations of disabling pain." *Id.* (citing *Coleman v. Saul*, 979 F.3d 751, 755-56 (9th Cir. 2020)). The Commissioner describes the law accurately, but does not persuasively describe the ALJ's decision in this case. The ALJ did make passing reference to "inconsistent urine drug screens," but she nowhere made any finding based on that remark. The ALJ certainly did not suggest—let alone make a sufficiently clear statement that she was finding—that Plaintiff's symptom testimony would be rejected based on these drug screens. And "[l]ong-standing principles of administrative law require [a reviewing court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

c. The Commissioner also defends the ALJ's reliance on Plaintiff's activities of daily living as a basis for discounting Plaintiff's symptom testimony. As the Commissioner puts it, Plaintiff's "activities contradicted her allegations about the limiting effects of her impairments." Dkt. No. 11, at PageID.2254. But none of the activities of daily living on which the ALJ relied—as opposed to the ones the Commissioner picks out of the administrative record himself—are adequate to support the ALJ's conclusion.

The Ninth Circuit has held that activities of daily living may be used to contradict a claimant's symptom testimony "only if (1) the activities actually contradict the claimant's symptom testimony, or (2) they show that the claimant spends a substantial part of their day engaged in pursuits that are transferrable to a work setting." *Auapaau v. O'Malley*, Civ. No. 24-00176, 2024 WL 4301378, at *3 (D. Haw. Sept. 26, 2024) (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)).

Nothing that the ALJ identified in Plaintiff's activities of daily living satisfy these rigorous standards. The ALJ first observed that Plaintiff "reported caring for her father after a stroke in early 2024 and reported swimming regularly when seen in July 2024." Dkt. No. 8-1, at PageID.50 (AR at 25). The ALJ did not suggest that any of this showed that Plaintiff spent a substantial part of her day engaged in transferrable pursuits. Nor did the ALJ identify any contradiction: the ALJ did not even suggest how Plaintiff's care for her father or her swimming regularly might contradict Plaintiff's testimony that

she cannot walk, sit, or stand for more than 10 to 20 minutes without facing incapacitating pain. And despite the ALJ's responsibility to develop the record, the ALJ asked no questions about these matters at the hearing. "The record as it stands, then, does not support the ALJ's conclusion that Plaintiff's part time caregiving [or swimming] contradicted Plaintiff's symptom testimony." *Jennifer S.*, 2026 WL 2098951, at *3.

The ALJ next relied on the fact that, although Plaintiff "testified that she has driving restrictions (10 minutes) assessed by one of her doctors in 2023 and previously did not drive at all, the record does not document medical restrictions or corroborate this testimony." Dkt. No. 8-1, at PageID.50-51 (AR 25-26). But again, it is the ALJ's obligation to develop the record; the undeveloped nature of the record cannot be held against Plaintiff. To be sure, if the ALJ had established that there in fact was no driving restriction—if the ALJ had developed the record adequately to support that finding—that could have served as a basis for discounting Plaintiff's testimony. But the ALJ did not suggest that she was making a finding of that sort.

The ALJ's final activity of daily living was the generalized fact that "while the claimant testified her sister is her part-time caregiver, the claimant lives independently maintaining a household in another location during the week." *Id.* at PageID.51 (AR at 26). That is not sufficient. The ALJ pointed to nothing about Plaintiff's living alone that

contradicted her testimony that she could not walk, stand, or sit for more than 10 to 20 minutes without incapacitating pain.

d. As a final reason in support of her rejection of Plaintiff's symptom testimony, the ALJ pointed to what she described as "internal inconsistencies in the longitudinal record that detract from the claimant's subjective complaints." *Id.* at PageID.50 (AR 25). The Commissioner does not defend this reason in his answering brief, and any reliance on it is therefore forfeited. In any event, the reason is meritless.

The ALJ began by noting that although Plaintiff "has primarily alleged disability stemming from a work-related injury from April 2017," she "notably continued to work for another 8 or 9 months." *Id.* at PageID.50 (AR at 25). But Plaintiff explained this at the hearing: she continued to be assigned to work "full duty," but after her public defender's office "couldn't allow [her] to take the time off anymore, then they put [her] out on sick leave" and ultimately terminated her contract. *Id.* at PageID.75-76 (AR at 50-51). Nothing in Plaintiff's hearing testimony suggests that she was, in fact, working full-time during the eight-to-nine month time period following the table-dropping incident. If the ALJ intended to hold that time period against Plaintiff, she should have first developed the record more fully at the hearing. As the record stands, this is not an appropriate basis on which to affirm.

Separately, the ALJ notes that the pain from Plaintiff's spinal injury radiates down toward the left side of her body, but that Plaintiff had "reported very similar left-

sided symptomatology" years before the table-dropping incident. *Id.* But the ALJ offered no reason why this evidence would contradict Plaintiff's testimony. The fact that Plaintiff's spinal injuries might have been *aggravated* by the table-dropping incident—rather than that incident having given rise to spinal problems in the first place—does not supply any reason to doubt that Plaintiff is disabled now. At the least, the ALJ offered no reason to believe it does.

* * *

For the foregoing reasons, the court concludes that the ALJ—acting here on the Commissioner's behalf—did not offer adequate reasons to reject Plaintiff's symptom testimony. The Commissioner's decision denying Plaintiff's application for Social Security disability benefits is, therefore, REVERSED and the case is REMANDED for further administrative proceedings consistent with this order. Given this ruling, the court declines to resolve Plaintiff's alternative argument for reversal, which is that the ALJ erred for the independent reason that she did not adequately consider the opinions of five different medical professionals who opined that Plaintiff could not perform full-time work. Dkt. No. 10, at PageID.2238-47. *Accord Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding for one reason and "declin[ing] to reach [an] alternative ground").

//

//

IT IS SO ORDERED.

DATED: September 2, 2026, at Honolulu, Hawaiʻi.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge